**2015 IL 118139**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 118139)

HENDERSON SQUARE CONDOMINIUM ASSOCIATION *et al.*, Appellees,
v. LAB TOWNHOMES, LLC, *et al.*, Appellants.

*Opinion filed November 4, 2015.—Modified upon denial of rehearing January 28, 2016.*

JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Kilbride and Theis concurred in the judgment and opinion.

Justice Burke dissented, with opinion, joined by Justices Freeman and Karmeier.

## OPINION

¶ 1 Plaintiffs, Henderson Square Condominium Association (Henderson) and Henderson's board of managers (Board), filed suit against defendants, alleging five separate counts: breach of the implied warranty of habitability, fraud, negligence, breach of the Chicago Municipal Code's prohibition against misrepresenting material facts in the course of marketing and selling real estate (see Chicago Municipal Code § 13-72-030) and breach of a fiduciary duty. Relevant to this

appeal, the circuit court of Cook County granted defendant's second motion to dismiss with prejudice, finding that plaintiffs failed to adequately plead counts IV (Chicago Municipal Code violation) and V (breach of fiduciary duty) and that these counts were time-barred under section 13-214 of the Code of Civil Procedure (735 ILCS 5/13-214 (West 1996)). Plaintiffs appealed, and the appellate court reversed the dismissal of counts IV and V, and remanded for further proceedings on those counts. 2014 IL App (1st) 130764. We allowed defendants' petition for leave to appeal, and for the reasons that follow, we affirm the judgment of the appellate court.

¶ 2                                    BACKGROUND

¶ 3        Plaintiffs filed their initial complaint on October 31, 2011. Plaintiff Henderson is a not-for-profit corporation with its principal place of business located in Chicago. Henderson is the governing body of a property of townhomes located in Chicago, and Henderson is controlled by its Board, which is comprised of elected managers.

¶ 4        Defendants can be divided into three groups, which we will refer to as (1) the development companies; (2) Enterprise; and (3) the Shipkas. The development companies are defendants LAB Townhomes, LAB Lofts, and Lincoln, Ashland & Belmont, which are limited liability companies incorporated in Delaware. Defendant Enterprise Development Company (Enterprise) is an Illinois corporation with its principal place of business in Chicago. The Shipkas are defendants Ronald Shipka, Sr., Ronald Shipka, Jr., and John Shipka, who are persons residing in Cook County.

¶ 5        Plaintiffs' original complaint alleged that the Shipkas are in the business of developing residential property, and they own, manage and operate Enterprise. The plaintiffs further alleged that Enterprise represented on its website that it was the "largest and most respected developer" in the Chicago area due to, among other things, its "commitment to rigid quality standards." The Shipkas were chosen by the City of Chicago to be the developers for a project known as the Lincoln-Belmont-Ashland Redevelopment Project Area. The Shipkas formed the development companies, which entered into a contract with the City of Chicago to construct a mixed use project. The project included retail space, a parking structure, loft condominiums, and townhouses. The development companies entered into an

agreement with Enterprise, under which Enterprise would "perform general contracting services to construct the Project or perform other services to assist with the development of the Project."

¶ 6        Prior to the completion of the project, Henderson was established as a condominium association in accordance with the Condominium Property Act (765 ILCS 605/1 *et seq.* (West 1996)) and its creation was recorded with the Cook County recorder of deeds. On June 20, 1996, Henderson was incorporated with the Illinois Secretary of State. The Shipkas designated themselves as Henderson's first board of managers, and during their time as managers, the Shipkas controlled all of Henderson's funds. The Shipkas turned over control to the first elected Board sometime in late 1996.

¶ 7        Plaintiffs alleged that defendants began to market and sell individual units of the project in 1996, and in doing so, they represented and impliedly warranted that the property and the units would be habitable and free from defects. Plaintiffs also alleged that the development companies sold the units with a form sales contract, which included a provision stating that the common elements of the project and the units would be "constructed substantially in accordance with the plans and specifications." After the project was completed and the owners began to occupy the units, certain units began to experience water seepage and resulting damage.

¶ 8        The Board retained Warton, Inc. (Warton), an exterior restoration consultant and engineer, to investigate the water problem. On May 18, 2009, Warton issued a report of its findings, concluding that "significant amounts of water were entering into certain units at various locations, including various exterior wall components." Warton further concluded that the "overall quality of construction detailing and workmanship at the specific areas that were investigated was very poor" and that the water penetration problems would be very difficult, if not impossible, to mitigate unless there was substantial reconstruction of the units.

¶ 9        After the Board reviewed the Warton report, it retained a contractor to solve the problem. The contractor began its work and confirmed that there were "a significant number of deficiencies with the original construction." The contractor reported that the coping leaked, the masonry lacked mortar, there was no flashing or drainage system, the lintels and sills were not sealed, and the roofing systems were defective.

¶ 10        Plaintiffs alleged that the defects identified by Warton and the contractor could not have been discovered without performing extensive testing of the units or opening up the walls or common areas and units. The defects were concealed and were therefore not reasonably discoverable by the unit owners who did not possess special knowledge or skill in the field of construction. Plaintiffs alleged that defendants did not construct the units in a workmanlike manner or in accordance with the plans and specifications as required. Moreover, plaintiffs alleged on information and belief that the development companies and Enterprise knowingly failed to comply with the plans and specifications, cutting costs for the purpose of realizing greater profits from the city contract.

¶ 11        On January 3, 2012, defendants filed their first motion to dismiss, brought pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2010)). In their motion, defendants addressed counts I, II, and III, but did not address counts IV and V. Defendants maintained that under section 13-214(a) and (b) of the Code (735 ILCS 5/13-214(a), (b) (West 1996)), plaintiffs' claims were time-barred, having been filed more than 14 years after defendants turned over control of Henderson to the Board in 1996.

¶ 12        The trial court granted defendants' section 2-619 motion to dismiss counts I, II and III without prejudice. The court also granted plaintiffs leave to file an amended complaint concerning counts IV and V.

¶ 13        Plaintiffs filed an amended complaint on July 2, 2012. Plaintiff repleaded the allegations of counts I, II, and III for the purpose of preserving them for appeal. With respect to count IV of that complaint, plaintiffs allege that defendants Enterprise and the development companies, but not the Shipkas, breached section 13-72-030 of the Chicago Municipal Code (Municipal Code), which states that "[n]o person shall with the intent that a prospective purchaser rely on such act or omission, advertise, sell or offer for sale any condominium unit by (a) employing any statement or pictorial representation which is false or (b) omitting any material statement or pictorial representation." Chicago Municipal Code § 13-72-030. In the course of selling the units, Enterprise and the development companies represented that the project and the units would be constructed in accordance with the plans and specifications, and would be free from defects. Section 13-72-100 of the Municipal Code states that "any prospective purchaser, purchaser or owner of a unit" may bring an action to enforce section 13-72-030. Chicago Municipal Code § 13-72-100 (amended Nov. 16, 2011).

¶ 14      Plaintiffs' amended complaint further alleges that when defendants began marketing the units for sale, defendants provided prospective purchasers with an information packet (information packet) that included details about the project, including building specifications. The information packet, which plaintiffs attached to their amended complaint, stated that "[a]ll insulation shall be soundbatt fiberglass with the following R values: Exterior walls—R11; Third floor ceiling—R30 with integral vapor barrier."

¶ 15      The amended complaint also alleges that Enterprise and the development companies, in the course of selling the units, made false material representations in the information packet, which it summarizes as follows:

> "(1) that the Property and the Units reflected 'new architectural energies and solid construction skills';

> (2) that the [development companies] and/or Enterprise was committed to 'quality construction and detail' for the Property and Units;

> (3) that the [development companies] and/or Enterprise consistently deliver 'quality buildings' and 'successful developments' which succeed 'architecturally, aesthetically and economically'; and

> (4) that '[a]ll insulation shall be soundbatt fiberglass with the following R values: Exterior walls—R11; Third floor ceiling—R30 with integral vapor barrier.' "

Plaintiffs allege that Enterprise and the development companies knew and intended the representations in the information packet to be false.

¶ 16      With respect to count V of the amended complaint, plaintiffs allege that the Shipkas breached their fiduciary duty to the unit owners to pay their share of common expenses and to fund sufficient reserves.[1] Plaintiffs allege that the Shipkas, during their time as members of the Board, failed to fund common expenses and reserves sufficiently to repair the project despite the fact that they knew or should have known that plaintiff Henderson's obligations could not be met without sufficient reserve funds. Further, the Shipkas knew or should have known that the project contained extensive defects and that the funding they provided during their tenure on the Board was inadequate to address those defects. The

---

[1]Plaintiffs' original complaint alleged that all of the defendants breached a fiduciary duty.

Shipkas also participated in making the above misrepresentations concerning the project with the intention of deceiving purchasers.

¶ 17 On August 6, 2012, defendants filed their second motion to dismiss, this time seeking dismissal pursuant to both sections 2-615 and 2-619 of the Code in a combined motion to dismiss. See 735 ILCS 5/2-619.1 (West 2010). Defendants attached to the motion as exhibits certificates of occupancy to assert that construction was completed on November 27, 1996. Defendants also attached the affidavit of John Shipka, stating that all units were conveyed to the original owners by the end of 1996. Defendants argued that these documents show that more than 14 years passed from the time of completion of the work and turnover to Henderson in 1996 to the filing of the lawsuit on October 31, 2011.

¶ 18 Defendants based their section 2-619 motion on the argument that all of plaintiffs' causes of action were time-barred. Defendants relied upon section 13-214(a), (b) of the Code of Civil Procedure (735 ILCS 5/13-214(a), (b) (West 1996)) to contend that construction claims are subject to a 4-year statute of limitations and a 10-year statute of repose.

¶ 19 Section 13-214 applies only to real estate construction claims, and sets forth both (a) a statute of limitations and (b) a statute of repose. Subsection (a) of section 13-214, which sets forth the statute of limitations, states in relevant part as follows:

"(a) Actions based upon tort, contract or otherwise against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property shall be commenced within 4 years from the time the person bringing an action, or his or her privity, knew or should reasonably have known of such act or omission." 735 ILCS 5/13-214(a) (West 1996).

¶ 20 Subsection (b) of section 13-214, which sets forth the statute of repose, states in relevant part as follows:

"(b) No action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 10 years have elapsed from the time of such act or omission. However, any person who discovers such act or omission prior to the expiration of 10 years from the time of such act or omission shall in no

event have less than 4 years to bring an action as provided in subsection (a) of this Section." 735 ILCS 5/13-214(b) (West 1996).

¶ 21 In the alternative, defendants argued in their motion that all of plaintiffs' claims were time-barred under section 13-205 of the Code of Civil Procedure (735 ILCS 5/13-205 (West 1996)). Section 13-205 establishes a five-year statute of limitations to "recover damages for an injury done to property, real or personal." *Id.* Defendants argued that plaintiffs failed to allege in their complaint when they first became aware they might have a cause of action on their hands, and therefore plaintiffs cannot allege they were unaware they had a cause of action until within five years from the filing the original complaint on October 13, 2011.

¶ 22 Defendants also moved to dismiss count IV pursuant to section 2-615, arguing that it failed to state a cause of action. Defendants asserted that count IV, alleging a violation of the Municipal Code, must be dismissed because the Municipal Code does not provide for a private right of action.

¶ 23 In their response to defendants' second motion to dismiss, plaintiffs argued, among other things, that by its own terms, the limitation of section 13-214 does not apply to causes of action arising out of fraudulent misrepresentations or to fraudulent concealment of causes of action. See 735 ILCS 5/13-214(e) (West 1996). For both the statute of limitations and the statute of repose, the section provides an exception for fraud: "The limitations of this Section shall not apply to causes of action arising out of fraudulent misrepresentations or to fraudulent concealment of causes of action." *Id.*

¶ 24 Plaintiffs argued that defendants knowingly misrepresented the condition of the property and then concealed the defects. Thus, section 13-214 is not applicable. Instead, the appropriate statute of limitations that governs this case is found in section 13-205, which has no period of repose, and affords litigants five years after the cause of action is discovered to bring their claims. Plaintiffs further argued that a question of fact exists as to when the limitations period was triggered.

¶ 25 The trial court ruled in favor of defendants and dismissed plaintiffs' amended complaint with prejudice. In so doing, the court rejected plaintiffs' argument that the liability was not based on construction-related activity. The court found that regardless of whether plaintiffs' claims were based on a misrepresentation or a fiduciary duty, the claims were construction claims for purposes of applying the

statute of limitations and statute of repose because plaintiffs sought to recover the costs to repair the alleged deficiencies.

¶ 26 The trial court found that the fraud exception to the statute of limitations and statute of repose did not apply because plaintiffs failed to allege facts with the necessary particularity to support a claim for fraud. In the court's view, a fraudulent misrepresentation requires the misrepresentation of a preexisting fact and does not encompass a promise to perform future conduct.[2]

¶ 27 Moreover, the trial court further found that plaintiffs failed to state a claim for either breach of a fiduciary duty or for misrepresentation under section 13-72-030 of the Municipal Code. According to the court, plaintiffs alleged that defendants were silent with regard to construction defects, but silence is not enough to support a claim for fraud unless defendant owes plaintiff a fiduciary duty. The trial court found that defendants did not owe plaintiffs a fiduciary duty in their role as "general contractor, constructor or landowner." The only fiduciary duty owed by defendants arose from their role as members of the Board, and that duty "was limited to securing funds, expenses and/or reserves sufficient to repair the common elements of property" for a short time through 1996. But defendants "had no duty to maintain fund[s] on behalf of the condominium in 2009." For these reasons, the court found that plaintiffs failed to state a claim in either count IV or V.

¶ 28 The plaintiffs appealed, and the appellate court reversed and remanded for further proceedings. 2014 IL App (1st) 130764, ¶ 136. The appellate court found that plaintiff's claims in count IV and V were construction related and therefore the limitation and repose of section 13-214 of the Code were applicable in the first instance. *Id.* ¶ 91. The court then found, however, that the fraud exception of section 13-214(e) was applicable (*id.* ¶ 93), and dismissal under section 2-619 of the Code was not appropriate because issues of material fact remained (*id.*

---

[2]The trial court overlooked a well-recognized exception to the general rule it sets forth. "[T]he general rule denies recovery for fraud based on a false representation of intention or future conduct, but there is a recognized exception where the false promise or representation of future conduct is alleged to be the scheme employed to accomplish the fraud." *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 334 (1977); accord *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 168-69 (1989); *Stamatakis Industries, Inc. v. King*, 165 Ill. App. 3d 879, 882 (1987). Here, count II of plaintiffs' original complaint alleged that the Shipkas made the false representations "as part of a scheme to induce prospective purchasers to purchase the units so [defendants] could profit from the sales." Furthermore, that count alleges that "[t]he unit owners relied upon those representations when they purchased their units and would not have purchased the units had they known the property and the units contained multiple and significant defects."

¶¶ 93-105). In particular, the appellate court rejected defendants' argument that there were no material misrepresentations or actions that could support a finding of fraudulent concealment. *Id.* ¶ 105. The court determined that defendants were "more than silent," as the amended complaint alleged that the marketing packet included specifications regarding the insulation to be used in constructing the project and stated that insulation would be used in the exterior walls and third-floor ceiling. *Id.* ¶ 102. Moreover, the plaintiffs' allegations of insufficient funding of the reserves raised a question of fact as to concealment. *Id.* ¶¶ 104-05.

¶ 29    The appellate court also found that the circuit court erred in dismissing counts IV and V under section 2-615 for failure to state a cause of action. With respect to count IV, the appellate court concluded that the Municipal Code allows private parties to seek damages under its provisions and that the representations here—which were made during the marketing process before construction was complete—were actionable under that Code. *Id.* ¶¶ 108-17. With respect to count V, the appellate court concluded that defendants had a fiduciary duty to budget for reasonable reserves. *Id.* ¶ 128. And whether defendants provided reasonable reserve funds for the repair and replacement necessitated by the allegedly known latent defects was a question of fact that was erroneously decided by the circuit court pursuant to a section 2-615 dismissal. *Id.*

¶ 30    Defendants filed a petition for leave to appeal (Ill. S. Ct. R. 315 (eff. July 1, 2013)), which we granted.

¶ 31                                    ANALYSIS

¶ 32    This appeal arises from an order granting defendants combined motion to dismiss filed under section 2-619.1 of the Code of Civil Procedure. 735 ILCS 5/2-619.1 (West 2010). Section 2-619.1 allows parties to file a single motion, containing motions pursuant to both section 2-615 and section 2-619 of the Code, so long as each motion is separated into a different part of the document.

¶ 33                              I. Section 2-619

¶ 34    Defendants' motion to dismiss plaintiffs' amended complaint as time-barred was based upon section 2-619(a)(5) of the Code (735 ILCS 5/2-619(a)(5) (West

2010)). A section 2-619 motion to dismiss admits as true all well-pleaded facts, along with all reasonable inferences that can be gleaned from those facts. *Wackrow v. Niemi*, 231 Ill. 2d 418, 422 (2008). In ruling on a motion to dismiss, a court must interpret the pleadings and supporting documents in the light most favorable to the nonmoving party. *Id.* This court's review of a section 2-619 motion to dismiss is *de novo*. *DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 504 (2006).

¶ 35                                    A. Fraudulent Concealment

¶ 36        Under the fraudulent concealment doctrine, the statute of limitations will be tolled if the plaintiff pleads and proves that fraud prevented discovery of the cause of action. 735 ILCS 5/13-215 (West 2010); *Clay v. Kuhl*, 189 Ill. 2d 603, 613 (2000). If a defendant has fraudulently concealed the cause of action from the plaintiff, the action may be brought within five years from the date the plaintiff discovers that he has a cause of action. 735 ILCS 5/13-215 (West 2010). Section 13-214(e) of the Code goes beyond tolling, however, and instead excepts from application the limitation period in subsection (a) and the repose period in subsection (b) of all "fraud-based construction claims," as well as all construction claims that are fraudulently concealed. *Gillespie Community Unit School District No. 7 v. Wight & Co.*, 2014 IL 115330, ¶ 41. But just because a construction-based claim has been fraudulently concealed and the limitations of section 13-214 are therefore not applicable, does not mean that no limitation period is applicable to the claim. Rather, such construction-based claims would still be governed by both the five-year statute of limitations in section 13-205 of the Code (735 ILCS 5/13-205 (West 2010); *Gillespie*, 2014 IL 115330, ¶ 41), and the discovery rule that provides that a party's cause of action accrues when a party knows or reasonably should know of an injury and that it was wrongfully caused (*Clay*, 189 Ill. 2d at 608).

¶ 37        Before this court, defendants first argue that plaintiffs failed to establish fraudulent concealment of their cause of action. They contend that plaintiffs were required to allege affirmative acts by defendants that occurred *after* the allegedly tortious acts (*i.e.*, the misrepresentations in the packet and the breach of fiduciary duty in connection with the reserve fund) that were calculated to induce defendants

into delaying the filing of their claims or preventing them from discovering their claims.[3]

¶ 38    We note that generally the concealment necessary to toll the statute of limitations must consist of affirmative acts or representations calculated to lull or induce a plaintiff into delaying the filing of his claim or preventing him from discovering the claim. *Orlak v. Loyola University Health System*, 228 Ill. 2d 1, 18 (2007). Defendants are mistaken, however, in their contention that the affirmative acts that constitute the fraudulent concealment must always be subsequent to and can never be the same statements or omissions that form the basis of the cause of action. This is especially true where section 13-214(e) is involved, which provides an exception to the limitation and repose periods for fraud-based construction claims. In fact, if defendants' premise is correct—*i.e.*, that the same fraudulent statements used to support fraudulent concealment are also being used to form the basis of plaintiffs' cause of action in this case—then the exception of section 13-214(e) would apply for the additional reason that it expressly states that "[t]he limitations of this Section shall not apply *to causes of action arising out of fraudulent misrepresentations* or to fraudulent concealment of causes of action." (Emphasis added.) 735 ILCS 5/13-214(e) (West 1996).

¶ 39    At any rate, this court held in *Keithley v. Mutual Life Insurance Co. of New York*, 271 Ill. 584, 598 (1916), that even though the acts constituting the fraudulent concealment "ordinarily must be subsequent to the accruing of the cause of action, *** they may be concurrent or coincident with it, or even precede it, provided they are of such a nature *** as to operate after the time when the cause of action arose and thereby prevent its discovery, and were so designed and intended." Here, plaintiffs' amended complaint alleges that the defendant companies—which the Shipkas own, manage and operate—knew and intended the misrepresentations in the marketing information packet to be false. Furthermore, plaintiffs allege that the defendant companies knowingly failed to comply with the plans and specifications

---

[3]Defendants additionally argue that the appellate court erred in relying upon cases that discuss the tort of fraudulent concealment (see 2014 IL App (1st) 130764, ¶¶ 99-103 (discussing *Fichtel v. Board of Directors of the River Shore of Naperville Condominium Ass'n*, 389 Ill. App. 3d 951 (2009), *Mitchell v. Skubiak*, 248 Ill. App. 3d 1000 (1993), and *Heider v. Leewards Creative Crafts, Inc.*, 245 Ill. App. 3d 258 (1993))), rather than the doctrine of fraudulent concealment of a cause of action. Defendants argue that there is a difference between the tort of fraudulent concealment and the fraudulent concealment of a cause of action. See *Gillespie*, 2014 IL 115330, ¶ 18 n.1. We find, however, that it is unnecessary to consider defendants' point further, as we will conduct our own *de novo* review, which will not rely upon the complained-of case law or the tort of fraudulent concealment.

in the packet, including the specifications regarding the insulation to be used in constructing the project and that the insulation would be included in the exterior walls and third-floor ceiling. Plaintiffs allege that defendants "covered up the Units' deficiencies in brick and mortar," cutting costs for the purpose of realizing greater profits from the city contract, and that these deficiencies could not have been discovered by plaintiffs "without extensive testing and opening up the walls of the common elements and the Units." Here, the allegations of plaintiffs' amended complaint read in the light most favorable to plaintiffs indicate a scheme to defraud plaintiffs that began with the misrepresentations in the packet and which was designed and intended to operate after the cause of action arose to prevent its discovery. Accordingly, we believe that the allegations of counts IV and V of the amended complaint fall within the exception of *Keithley*, and therefore dismissal pursuant to section 2-619 of the Code would not be proper.

¶ 40       Plaintiffs' counts at issue here also survive dismissal pursuant to section 2-619 of the Code because plaintiffs have sufficiently alleged a fiduciary duty in connection with the fraudulent concealment doctrine. Although it has been held that mere silence on the part of the defendant is insufficient to constitute fraudulent concealment (*Orlak*, 228 Ill. 2d at 18), a different rule applies when a fiduciary duty is involved:

> " ' " '[i]t is the prevailing rule that, as between persons sustaining a fiduciary or trust or other confidential relationship toward each other, the person occupying the relation of fiduciary or of confidence is under a duty to reveal the facts to the plaintiff (the other party), and that his silence when he ought to speak, or his failure to disclose what he ought to disclose, is as much a fraud at law as an actual affirmative false representation or act; and that mere silence on his part as to a cause of action, the facts giving rise to which it was his duty to disclose, amounts to a fraudulent concealment ***.' " ' " *Orlak*, 228 Ill. 2d at 19 (quoting *Hagney v. Lopeman*, 147 Ill. 2d 458, 463 (1992), quoting *Chicago Park District v. Kenroy, Inc.*, 78 Ill. 2d 555, 562 (1980), quoting L.S. Tellier, Annot., *What Constitutes Concealment Which Will Prevent Running of Statute of Limitations*, 173 A.L.R. 576, 588 (1948)).

The facts that indicate that the fraud was kept concealed through confidence placed in the fiduciary must be specifically pled in order to bring the discovery rule into play and to toll the statute of limitations. *Hagney*, 147 Ill. 2d at 465.

¶ 41        Plaintiffs' amended complaint alleges a fiduciary duty on the part of the Shipkas in connection with the reserve fund during their time on the board of managers. Section 9(c)(2) of the Condominium Property Act (765 ILCS 605/9(c)(2) (West 1996)) states that "[a]ll budgets adopted by a board of managers *** shall provide for reasonable reserves for capital expenditures and deferred maintenance for repair or replacement of the common elements." A board of managers shall determine what is reasonable by examining various factors, including "the repair and replacement cost, and the estimated useful life, of the property which the association is obligated to maintain." *Id.* The question of what constitutes reasonable budgeting for the reserve fund is a question of fact to be decided by the trier of fact. See 2014 IL App (1st) 130764, ¶ 104; see also *Board of Managers of Weathersfield Condominium Ass'n v. Schaumburg Ltd. Partnership*, 307 Ill. App. 3d 614, 623 (1999).

¶ 42        Specifically, plaintiffs allege that the Shipkas failed to provide sufficient funding for the reserve fund to meet the repairs needed due to the extensive defects in the construction. Furthermore, the amended complaint alleges that the Shipkas participated in making the misrepresentations concerning the project with the intent of deceiving the purchasers. Finally, the amended complaint alleges that the Shipkas knew or should have known that the project contained extensive defects and that the funding they provided during their tenure on the Board was not adequate to address those defects. Plaintiffs use these well-pled facts to argue before this court that defendants' misrepresentations, coupled with the Shipkas' failure to adequately fund the reserve fund was sufficient to allege fraudulent concealment. Plaintiffs explain that the amount budgeted for repairs by the Shipkas gave the appearance that the building was in much better shape than it was.

¶ 43        Defendants, on the other hand, rely upon this court's decisions in *Hagney* and *Orlak* to argue that plaintiffs were required to allege facts attributing the failure to discover the cause of action to the trust placed in the fiduciary. Defendants maintain that plaintiffs' amended complaint fails to allege such facts. Moreover, defendants take issue with plaintiffs' allegation that the Shipkas "knew or should have known" that the project contained extensive defects and that the funding provided during their tenure on the board was therefore inadequate. According to defendants, this allegation's inclusion of the words "or should have known" was not sufficient to satisfy the *scienter* element for a fraudulent concealment claim based upon a fiduciary duty.

- 13 -

¶ 44 We reject defendants' arguments and note that their reliance upon *Hagney* and *Orlak* is misplaced. *Hagney* merely requires that the *facts* necessary to indicate that the fraud was kept concealed through confidence placed in the fiduciary be pled in the complaint. Plaintiffs' complaint was inartfully drafted, but nonetheless it is apparent that the basic facts to bring the case within the standard set forth in *Hagney* have been met.

¶ 45 As to the allegation that the Shipkas knew or should have known that the project contained extensive defects and that the funding was therefore inadequate, we do not find it fatal to the cause of action under the circumstances. Plaintiffs have alleged that the Shipkas participated in making the misrepresentations concerning the project with the intent of deceiving the purchasers in a scheme to gain greater profits from the city contract. Plaintiffs have also alleged that the Shipkas controlled and operated the defendant companies that performed the contracting work, and those companies were supposed to be committed to "quality construction" that was to be performed in accordance with the plans and specifications they listed. Moreover, it was alleged that the Shipkas owed a fiduciary duty to the unit owners in connection with the funding of the reserve fund and that they breached that duty by failing to fund it in a sufficient manner and by participating in the fraudulent representations with the intent of deceiving the unit owners. These are sufficient facts from which it can reasonably be inferred that "the trust which was reposed in the fiduciary prevented the discovery of the cause of action" so as to satisfy the *Hagney* standard. See *Hagney*, 147 Ill. 2d at 465.

¶ 46 Defendant's reliance upon *Orlak* is also unavailing. There, the plaintiff was hospitalized in 1989 for an accident and received a blood transfusion under the defendant's care. In 1990, the defendant advised the plaintiff to be tested for HIV, which she did, testing negative. In 2000, the defendant advised the plaintiff to be tested for the hepatitis C virus (HCV), and the plaintiff tested positive for that virus. The plaintiff filed suit in 2002, alleging that the defendant was liable for failure to notify her by March 1997—when accurate testing for HCV allegedly first became available—that she should be tested for HCV. The defendant argued that the suit was time-barred under the four-year medical malpractice statute of repose (735 ILCS 5/13-212(a) (West 2002)). The plaintiff argued that the statute of repose was tolled by the fraudulent concealment exception of section 13-215 of the Code (735 ILCS 5/13-215 (West 2002)). Recognizing that she could not point to any affirmative acts on the defendant's part, the plaintiff instead argued that the general rule requiring affirmative acts does not apply where the parties have a fiduciary

- 14 -

relationship. *Orlak*, 228 Ill. 2d at 19. This court found that because the plaintiff was discharged from the defendant's care in 1989, there was no fiduciary relationship between the plaintiff and the defendant in 1996 and 1997, the time that the plaintiff alleges the defendant should have notified her of the need for HCV testing. *Id.* at 20.

¶ 47        *Orlak* has no application to the present case that is helpful to defendants because in *Orlak*, the plaintiff alleged that the defendant had an obligation to disclose facts that the defendant first learned *seven years after* the fiduciary relationship ended. Here, in contrast, plaintiffs' amended complaint alleges that the Shipkas participated in making the misrepresentations in the packet with the intention of deceiving the purchasers and that they then should have known that the reserve funding was inadequate to address the construction defects during the time that the Shipkas were still on the board and during the time they still had a fiduciary relationship. The present case is also distinguishable from *Orlak* because plaintiffs here have alleged affirmative acts to constitute fraudulent concealment in the form of the misrepresentations in the packet that were designed and intended to operate after the cause of action arose.

¶ 48        In sum, counts IV and V of plaintiffs' amended complaint were sufficient to survive a section 2-619 dismissal given the specific allegations. We find that at the very least a question of fact remains as to whether defendants' failure to speak about the construction deficiencies or in the alternative to adequately fund the reserve fund, coupled with the earlier alleged misrepresentations, amounted to fraudulent concealment so as to invoke the exception of subsection 13-214(e) to the limitation and repose periods of subsections 13-214(a) and (b).

¶ 49                                B. Section 13-205

¶ 50        Defendants next argue that the appellate court erred by failing to continue its statute of limitations analysis to consider whether the amended complaint was time-barred under the default five-year statute of limitations set forth in section 13-205 of the Code. The limitation of that section applies to "all civil actions not otherwise provided for." 735 ILCS 5/13-205 (West 1996).

¶ 51        As we have already noted, *Gillespie* holds that the time constraints of section 13-214 of the Code do not apply to causes of action arising out of fraudulent

- 15 -

misrepresentations or to fraudulent concealment, but that this does not mean that *no* limitations shall apply to causes of action arising out of fraudulent misrepresentations or to fraudulent concealment. *Gillespie*, 2014 IL 115330, ¶ 33. Rather, the five-year limitation of section 13-205 is applicable to fraud-based and fraudulently concealed construction claims. *Id.* We therefore agree that the appellate court should have completed an analysis under section 13-205, but we disagree with defendant's conclusion that the end result would have been a dismissal of plaintiffs' complaint at this stage.

¶ 52    Section 13-205 provides that the cause of action "shall be commenced within 5 years next after the cause of action accrued." 735 ILCS 5/13-205 (West 1996). A cause of action "accrues" when facts exist that authorize the bringing of the cause of action. *Khan v. Deutsche Bank AG*, 2012 IL 112219, ¶ 20. This court has, however, adopted the discovery rule to ameliorate the potentially harsh effect of a mechanical application of the statute of limitations that would result in it expiring before a plaintiff even knows of his cause of action. *Id.* The discovery rule postpones the start of the limitations period until a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused. *Id.* ¶ 21. At the point when the party knows or reasonably should know that the injury was wrongfully caused, the party is under obligation to inquire further to determine whether an actionable wrong has been committed. *Id.* The question of when a party knew or reasonably should have known both of an injury and its wrongful cause is one of fact, unless the facts are undisputed and only one conclusion may be drawn from them. *Id.*

¶ 53    Defendants argue that plaintiffs were vague and evasive in their pleading when they alleged their discovery of the water leakage "no later than the winter of 2007/2008." Defendants also point to the Warton report attached to plaintiffs' amended complaint. According to that report, the water leaks had been "ongoing for years" and several different repair attempts had been made. Defendants argue that plaintiffs failed to allege sufficient facts as to the date of discovery to properly invoke the discovery rule.

¶ 54    In response, plaintiffs argue that in late 2007 or early 2008, 4 of plaintiffs' 47 units, the garden units, first experienced minor leaks from the wooden decks that were located on the units above them. Plaintiffs believed that the repairs were sufficient, but when the leaks persisted, they engaged an engineer and a contractor to investigate. It was only then, in 2009, that plaintiffs first learned the construction

of the units was so poor that they would essentially have to be reconstructed. In 2009, plaintiffs also learned for the first time that the representations defendants made about the inclusion of insulation and the vapor barrier when they purchased the units were false. It was also at this time that plaintiffs discovered that the reserve fund set by the Shipkas was grossly insufficient to cover the deficiencies that existed from the time the units were originally constructed.

¶ 55 From our review of plaintiffs' amended complaint, we find that a question of fact exists that precludes dismissal pursuant to defendants' section 2-619 motion. Defendants focus all of their attention on the date plaintiffs first knew that there was water infiltration into the units. Plaintiffs, on the other hand, interpret their pleading as having alleged that water infiltration first occurred in late 2007 or early 2008. We note that if plaintiffs indeed intended to allege that water first infiltrated the units in late 2007 or early 2008, they have done an abysmally poor job of it. We find, however, that this point is of no moment under the circumstances here where the discovery rule requires that a plaintiff know both of his injury *and that it was wrongfully caused* to set the limitations period running. Here, plaintiffs filed their initial complaint on October 31, 2011. Thus, if it can be said that before October 31, 2006, plaintiffs did not know nor should they have reasonably known that their injury was wrongfully caused, then plaintiffs' suit is considered timely filed.

¶ 56 We find that the allegations of plaintiffs' complaint were clearly sufficient to raise a question of fact as to the time when plaintiffs knew or reasonably should have known that their injury was wrongfully caused. It is apparent from plaintiffs' amended complaint that after plaintiffs began experiencing water problems from the wood decks, they "hired a contractor to perform minor suggested repairs and undertake certain maintenance work to abate the problem." According to the amended complaint, plaintiffs "reasonably believed they had remediated the water infiltration problems." But despite plaintiffs' best efforts and given their lack of knowledge of the latent defects, "the water infiltration problem continued and further units began to experience similar problems." As a result, they then hired Warton in 2009 to evaluate the source of water infiltration. Plaintiffs then reviewed the Warton report issued in May 2009, and as a result hired a contractor to begin remediation work. It was only after the contractor's work progressed and he opened up the walls to undertake invasive testing and repairs, which first started in late 2009, that plaintiffs first discovered that a significant number of latent deficiencies existed with the original construction, including leaky coping, masonry that lacked mortar, lack of flashing or a drainage system, unsealed lintels and sills, and walls

and top-floor ceilings that lacked insulation and a proper and integral vapor barrier. Finally, plaintiffs alleged that the defects could not have been discovered any sooner than 2009 when testing and work was begun.

¶ 57        The facts alleged in the present case are similar to those in a number of cases where Illinois courts have found that fixing a date of discovery was a question of fact for the trier of fact that could not be decided on a defendant's motion to dismiss. See, *e.g.*, *County of Du Page v. Graham, Anderson, Probst & White, Inc.*, 109 Ill. 2d 143, 153-54 (1985) (the date the plaintiff knew or reasonably should have known that his injury was wrongfully caused is normally a question of fact); *La Salle National Bank v. Skidmore, Owings & Merrill*, 262 Ill. App. 3d 899, 906 (1994) (same); *Society of Mount Carmel v. Fox*, 31 Ill. App. 3d 1060 (1975) (same). In *Graham*, this court emphasized that under the discovery rule, the statute of limitations in construction cases begins to run "when a person knows or reasonably should know of his injury *and* also knows or reasonably should know that it was wrongfully caused." (Internal quotation marks omitted and emphasis added.) *Graham*, 109 Ill. 2d at 153-54. In *Graham*, the plaintiff knew of moisture problems in its building, which was constructed by the defendant eight years before the plaintiff's complaint was filed in 1982 for faulty construction. The architect had provided reasons for the moisture problems that were not actionable, and the plaintiff attempted repairs over a number of years that were unsuccessful in solving the problem. This court reversed the trial court's order that dismissed the plaintiff's cause of action. In so doing, this court observed as follows:

> "Although the [plaintiff] was aware of the moisture problem as early as 1974, it is impossible to state, as a matter of law, that this knowledge was sufficient to trigger the running of the limitations period. It is possible that the suggestions of the architect and the resulting repairs were adequate to keep a reasonable person from investigating further." *Id.* at 154.

¶ 58        In *Fox*, the plaintiffs sued their architect for the faulty construction of a school. Plaintiffs noticed cracks and defects in the building more than five years before their complaint was filed. Plaintiffs, however, attempted repairs of what they were led to believe were "maintenance problems." Sometime later, the plaintiffs obtained a report that indicated the cracks were caused by a design defect involving the lack of expansion joints. *Fox* affirmed a verdict for the plaintiffs after a lengthy trial and held that the statute of limitations did not begin to run until the date of the discovery of the design defect, rather than the date when the plaintiffs knew of the

cracks in the building. *Society of Mount Carmel v. Fox*, 90 Ill. App. 3d 537, 538-39 (1980).

¶ 59    Similar to *Graham* and *Fox*, we find that it is possible that the minor repairs in the present case, coupled with the limited nature of the water infiltration experienced, was enough to reasonably delay plaintiffs' hiring of professional contractors to open up the wall and to discover the latent defects. We conclude that the date when plaintiffs knew or reasonably should have known that an injury occurred and that it was wrongfully caused was a question of fact not to be decided on a motion to dismiss under the circumstances of the present case.

¶ 60                                II. Section 2-615

¶ 61    We now turn to the section 2-615 portion of defendants' motion to dismiss, which tests the legal sufficiency of the amended complaint. The question presented on review is whether the allegations of the complaint, construed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Turner v. Memorial Medical Center*, 233 Ill. 2d 494, 499 (2009). In making this determination, all well-pleaded facts must be taken as true. *Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 16. A court should not dismiss a complaint pursuant to section 2-615 unless it clearly appears that no set of facts can be proved that would entitle the plaintiff to recovery. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). The standard of review is *de novo*. *Id.*

¶ 62         A. Count IV—Section 13-72-030 of the Chicago Municipal Code

¶ 63    As previously noted, count IV of plaintiffs' amended complaint alleges a violation of section 13-72-030 of the Municipal Code. That section provides as follows:

"No person shall with the intent that a prospective purchaser rely on such act or omission, advertise, sell or offer for sale any condominium unit by (a) employing any statement or pictorial representation which is false or (b) omitting any material statement or pictorial representation." Chicago Municipal Code § 13-72-030.

- 19 -

¶ 64    The trial court found that because section 13-72-030 "appears to prohibit misrepresentations or omissions of material fact[,] *** it is similar to a fraud claim." The trial court noted that the statements regarding the kind of construction methods and material to be used were "not the sort of specific statements which form the basis of a misrepresentation claim." The trial court then concluded that "[s]imilar to a fraud claim, the language of section 13-72-030 applies to misrepresentations of pre-existing facts, and therefore does not apply to a promise to perform future conduct."

¶ 65    The appellate court disagreed with the trial court's analysis and found that section 13-72-030 is not a codification of common-law fraud and the trial court's conclusion that it only applies to preexisting facts was erroneous. The appellate court found that the provision was a remedy in addition to common-law fraud and was not limited to preexisting facts because it "concerns the marketing and sale of condominiums, which may occur before construction is complete." 2014 IL App (1st) 130764, ¶ 117. Justice Palmer in his special concurrence wrote to emphasize that section 13-72-030 cannot be equated with common-law fraud because by its plain language, it does not require that the offending statement be a statement of *fact*. He noted that if the city council had wanted to equate this section with common-law fraud it could have easily done so by using the phrase, "statement of *fact* which is false," as opposed to simply using the phrase "any statement *** which is false." (Emphasis in original.) 2014 IL App (1st) 130764, ¶ 143 (Palmer, J., specially concurring).

¶ 66    Defendants argue that the trial court has the better view, and the protections of the Municipal Code should be construed narrowly to bar recovery for statements that do not concern purported preexisting facts but are instead simply promises that turn out to be false. Defendants also argue that the phrase "any statement" in section 13-72-030 should be limited to refer to the specific statements a developer is required to disclose to a prospective purchaser in its "property report." A property report is mentioned in a different section of the Municipal Code, section 13-72-020. See Chicago Municipal Code § 13-72-020. Section 13-72-020 requires disclosure in a "property report" of certain information, such as the name of the developer, whether the purchaser may purchase more than one unit, whether there is anything that would affect title to the property, the current taxes and the estimated monthly payments in the first year that includes a list of certain expenses associated with the property, and other items. Chicago Municipal Code

§ 13-72-020. Defendants note that section 13-72-020 does not require any disclosures about the insulation to be used in the units.

¶ 67    This court's primary objective in interpreting a statute or ordinance is to ascertain and give effect to the intent of the legislative body. See *Gillespie*, 2014 IL 115330, ¶ 31; *People v. Martino*, 2012 IL App (2d) 101244, ¶ 25. The best indication of that intent is the language used, which must be given its plain and ordinary meaning. *Metropolitan Life Insurance Co. v. Hamer*, 2013 IL 114234, ¶ 18. If the language is clear and unambiguous, it will be given effect without resort to other aids of statutory construction. *Kunkel v. Walton*, 179 Ill. 2d 519, 534 (1997).

¶ 68    Here, we find that the language of section 13-72-030 unambiguously provides that "any" false statement employed in connection with the advertising or sale of a condominium unit with the intent that the prospective purchaser rely upon it is actionable. Moreover, nothing in the section tethers the "any statement *** which is false" language to the kind of statement required to maintain a common-law fraud claim. Section 13-72-030 relates to the marketing and sale of condominiums, which may occur before construction is complete. Thus, the statements made in connection with the marketing and sale may not, and probably do not, concern preexisting facts. Instead, the statements are *made with the intent* that the prospective purchaser rely on them, which, in the developer's view, will hopefully lead to that prospective purchaser actually buying a unit. We also find no merit to the defendants' contention that the "any statement" language in section 13-72-030 should be construed to refer to the limited information required by section 13-72-020 to be included in the "property report." It seems to us that defendants' interpretation would be inconsistent with the plain language of the ordinance and would defeat the apparent intent of the city council to fully address the problem of deceit in the marketing and sale of condominium projects that are being newly developed. We also agree with the specially concurring justice in the appellate court who believed that if the city council had intended to limit the scope of section 13-72-030 to statements that involve preexisting facts, it would have said so.

¶ 69    We further note that the trial court's analysis seems to have ignored the well-recognized exception to the general rule against common-law promissory fraud actions. Under that exception, false promises or misrepresentations of future conduct are actionable where they are alleged to be the scheme employed to accomplish the fraud. *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*,

131 Ill. 2d 145, 168-69 (1989); *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 334 (1977); *Roda v. Berko*, 401 Ill. 335, 340 (1948); *Stamatakis Industries, Inc. v. King*, 165 Ill. App. 3d 879, 882-83 (1987). Here, count II of plaintiffs' complaint, which was also dismissed by the trial court, did allege that the defendants made false representations in a "scheme to induce prospective purchasers to purchase the units so [defendants] could profit from the sales." Furthermore, that count alleges that "[t]he unit owners relied upon those representations when they purchased the units and would not have purchased the units had they known the property and the units contained multiple and significant defects." Thus, it is apparent that even if we were to accept the trial court's and defendants' narrow interpretation of section 13-72-030 that limits it to a form of common-law fraud known as fraudulent misrepresentation (which we do not), dismissal of count IV of plaintiffs' amended complaint under section 2-615 would still seem suspect. This is because even under a traditional, common-law fraudulent-misrepresentation analysis, it is not clearly apparent that no set of facts could be alleged and proved that would entitle plaintiffs to recovery where plaintiffs have demonstrated that they can allege that the false promises were the scheme employed to accomplish the fraud, a recognized exception to the rule against promissory fraud claims.

¶ 70   Defendants next argue that the appellate court misconstrued the facts in reaching its holding that defendants made false statements about the insulation. In our view, much of defendants' argument in connection with the missing insulation raises irrelevant points. Defendants' main point, however, seems to be that the appellate court misread the marketing packet to say that insulation would be provided when the packet actually states that "[a]ll insulation shall be soundbatt fiberglass with the following R values: Exterior walls—R11; Third floor ceiling—R30 with integral vapor barrier." According to defendants, this language simply means that to the extent that any insulation is installed at all, it would be of the specified values. In other words, according to defendant, there was no representation that insulation or a vapor barrier would be installed.[4] We reject

---

[4]Defendants seem to have dropped the argument that they made in the appellate court that the disclaimer in the packet covered them so that they could not be deemed to have made any representations about the insulation. The disclaimer provides that the specifications "are subject to revisions deemed advisable by the developer or architect, or required by law." We agree with the appellate court that the disclaimer does not cover defendants "for the sections of the exterior wall and third-floor ceiling where insulation was missing entirely, or those sections that used insulation of a different grade than that advertised in the packet." 2014 IL App (1st) 130764, ¶ 103.

defendants' argument. We instead find the statement in the packet to be an advertisement promising that insulation and a vapor barrier would be installed.

¶ 71    Defendants next argue that the appellate court's interpretation of section 13-72-030 would change real estate practice in the City of Chicago with respect to the sale of condominiums by creating a cause of action for false statements without regard to certain "contractual disclaimers," such as integration clauses, the parol evidence rule and the statute of frauds. We find nothing persuasive in defendants' argument. The appellate court applied the plain meaning of the language used by the city council to find that any false statement made with the intent that the prospective purchaser rely upon it in connection with the advertising or offering for sale of a condominium unit is actionable. The "contractual disclaimers" defendant mentions have no application to a tort action based on a violation of an ordinance that seeks to protect prospective purchasers from being induced to enter condominium sales by false statements made by the developer. Defendants' concerns about the ordinance seem to be more pointed toward the propriety of the legislation rather than to the straightforward application of it by the appellate court.

¶ 72    Defendants next argue that the appellate court erred in holding that private parties could recover monetary damages as a remedy under the preamended version of section 13-72-100, which is the version applicable here. Section 13-72-100 currently provides that prevailing parties bringing a cause of action for a violation of chapter 13-72, including section 13-72-030, "shall be entitled to recover, in addition to any other remedy available, his damages and reasonable attorney fees." See Chicago Municipal Code § 13-72-100 (amended Nov. 16, 2011). Defendants argue that the inclusion of the word "damages" in the above-quoted language where it was not previously included until the Chicago Municipal Code was amended in 2011 indicates that the preamended version did not allow a private party to recover damages for a violation of chapter 13-72.

¶ 73    In rejecting this same argument, the instant appellate court relied upon *Wolinsky v. Kadison*, 2013 IL App (1st) 111186, which addressed a remedies provision in a chapter of the Chicago Municipal Code dealing with discrimination in the sale or lease of condominiums, which was similar to the preamended remedies provision in the present case. *Wolinsky* found that the broad provision that remedies under the ordinance be cumulative and in addition to other remedies reflected the legislature's intent that a cause of action for damages be allowed for violations of the ordinance. *Id.* ¶ 40.

- 23 -

¶ 74        Defendants argue that instead of relying upon *Wolinsky*, the appellate court should have looked to the factors set forth in *Abbasi v. Paraskevoulakos*, 187 Ill. 2d 386, 393 (1999), for determining when a court may imply a private right of action, which are (1) whether the plaintiff is a member of the class for whose benefit the statute was enacted, (2) whether a private right of action is consistent with the underlying purpose of the statute, (3) whether the plaintiff's injury is one the statute was designed to prevent, and (4) whether it is necessary to provide an adequate remedy for violations of the statute. There is no merit to defendants' argument given that both the amended and preamended version of the Chicago Municipal Code *expressly* gives the plaintiffs a private right of action. Section 13-72-100 of the Chicago Municipal Code has always provided that "any prospective purchaser, purchaser or owner of a unit" may bring an action to enforce section 13-72-030 and "shall be entitled to recover, in addition to any other remedy available, his reasonable attorney fees." Thus, the question here is different than *Abbasi* and involves the more narrow point of whether plaintiffs could recover damages under the preamended version, where that version allows a private right of action and does not limit the remedies set forth but rather states that they are cumulative to "any others available."

¶ 75        We believe that the appellate court and *Wolinsky* have provided the correct analysis. But we find that plaintiffs would prevail even upon application of the *Abbasi* factors. Defendants argue that section 13-72-030 was intended to benefit only those to whom defendants directly marketed the units, but defendants then admit that a number of the current unit owners were original purchasers. Moreover, it is clear that a condominium association generally has standing to pursue claims that affect the unit owners or the common elements. See *Poulet v. H.F.O., L.L.C.*, 353 Ill. App. 3d 82, 90 (2004); *St. Francis Courts Condominium Ass'n v. Investors Real Estate*, 104 Ill. App. 3d 663, 668 (1982). Thus, we find defendants' argument to be unpersuasive.

¶ 76                        B. Count V—Breach of Fiduciary Duty

¶ 77        Defendants' final argument is that plaintiffs failed to allege sufficient facts to overcome the business judgment rule. Under the business judgment rule, in the absence of bad faith, fraud, illegality or gross overreaching, courts will not interfere with the exercise of business judgment by corporate directors. See *Palm v. 2800*

*Lake Shore Drive Condominium Ass'n*, 2014 IL App (1st) 111290. When a board properly exercises its business judgment in interpreting its own declaration, a court will not find the board's interpretation to be a breach of fiduciary duty. See *Carney v. Donley*, 261 Ill. App. 3d 1002, 1011 (1994). If, however, the board members fail to exercise due care, then they may not use the business judgment rule as a shield for their conduct. See *Palm*, 2014 IL App (1st) 111290, ¶ 111.

¶ 78 Defendants argue that they only had a duty to prepare an estimated operating budget projecting a *first* year reserve fund following turnover. Furthermore, defendants cite section 13-72-020 (amended May 4, 2011) of the Chicago Municipal Code, which provides that a developer does not have to fund the reserve at all if the developer includes a statement in the property report disclosing that the developer has not provided for the reserve fund and therefore a special assessment directed to all condominium unit owners may be necessary to pay for future possible costs should they occur. See Chicago Municipal Code § 13-72-020 (amended May 4, 2011). Defendants fault plaintiffs for failing to allege in their complaint an absence of such a disclaimer. But defendants do not argue that they actually chose not to fund the reserve and instead provided a disclaimer. Rather, defendants take issue with the fact that according to defendants, plaintiffs' complaint "alleges nearly 15 years after control of the board was turned over to the unit owners, that the first year initial budget was inadequate, in hindsight, because it did not set a high enough reserve fund to perform all of the required repairs in the first year." Finally, defendants weave into their argument the fact that the condominium bylaws in this case required that in setting the amount of a reserve fund, the board take into consideration a number of factors, which includes, among other things, "the repair and replacement cost, and estimated useful life of the property, which the association is obligated to maintain."[5]

¶ 79 Defendants' invocation of the business judgment rule at this point must be rejected. Plaintiffs' amended complaint specifically alleges that defendants acted fraudulently and in bad faith when they knew of the shoddy construction yet failed to account for those repairs (that would have been immediately required in 1996 had the unit owners known about the latent defects) when they set the reserves. We find that the questions presented—whether defendants' actions were reasonable in

---

[5]The other factors are "(ii) the current and anticipated return on investment of association funds; (iii) any independent professional reserve study which the association may obtain; (iv) the financial impact on unit owners, and the market value of the units, of any assessment increase needed to fund the reserves; and (v) the ability of the association to obtain financing or refinancing."

light of what they knew, what constitutes reasonable budgeting of a reserve fund in view of the factors listed in the bylaws, and whether the business judgment rule prevents plaintiffs from recovering under the particular circumstances—are questions of fact. See *Board of Managers of Weathersfield Condominium Ass'n*, 307 Ill. App. 3d at 623. We therefore conclude that plaintiffs' allegations are sufficient to state a cause of action for breach of fiduciary duty.

¶ 80                                    CONCLUSION

¶ 81        For the foregoing reasons, we affirm the appellate court's decision reversing the trial court's order dismissing counts IV and V of plaintiffs' amended complaint. We remand the cause to the circuit court of Cook County for further proceedings consistent with this opinion.

¶ 82        Appellate court judgment affirmed.

¶ 83        Cause remanded.

¶ 84        JUSTICE BURKE, dissenting:

¶ 85        I disagree with both the majority's holding that plaintiffs have adequately alleged fraudulent concealment under section 13-214(e) of the Code of Civil Procedure (735 ILCS 5/13-214(e) (West 1996)), as well as the majority's holding that plaintiffs have adequately pled a violation of section 13-72-030 of the Chicago Municipal Code (Chicago Municipal Code § 13-72-030). I therefore respectfully dissent.

¶ 86                            I. Fraudulent Concealment

¶ 87        The threshold issue in this case is whether plaintiffs' complaint is barred by section 13-214(b) of the Code of Civil Procedure (735 ILCS 5/13-214(b) (West 1996)). This provision, which sets forth the statute of repose for construction related causes of action, states:

- 26 -

"(b) No action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 10 years have elapsed from the time of such act or omission. However, any person who discovers such act or omission prior to expiration of 10 years from the time of such act or omission shall in no event have less than 4 years to bring an action as provided in subsection (a) of this Section." *Id.*

There is no question that section 13-214(b) is applicable in this case as plaintiffs' complaint was filed approximately 15 years after defendants completed construction on the residences that plaintiffs allege are defective.

¶ 88       The majority concludes, however, that plaintiffs' complaint may go forward under section 13-214(e) (735 ILCS 5/13-214(e) (West 1996)). This provision states that the 10-year statute of repose "shall not apply to causes of action arising out of fraudulent misrepresentations or to fraudulent concealment of causes of action." *Id*. According to the majority, plaintiffs' complaint sufficiently alleges that defendants fraudulently concealed plaintiffs' causes of action. The majority offers two rationales in support of this conclusion: (1) plaintiffs allege that all defendants knowingly made certain false statements in a sales brochure or informational packet that was part of the defendants' marketing efforts when the Henderson Square units were being sold in 1995 and 1996 and, (2) plaintiffs allege that the reserve fund set by defendants Ronald Shipka, Sr., Ronald Shipka, Jr., and John Shipka, when they were on the board of managers for the condominium association in 1996 was knowingly set at too low a level. *Supra* ¶¶ 35-48. I address these rationales in turn.

¶ 89                           A. The Statements in Defendants' Sales Brochure

¶ 90       To establish fraudulent concealment under section 13-214(e), a plaintiff must plead and prove that the defendant made affirmative representations or acts which were calculated to lull or induce the plaintiff into delaying the filing of his claim or to prevent the plaintiff from discovering his claim. *Orlak v. Loyola University Health System*, 228 Ill. 2d 1, 18 (2007). In addition, the plaintiff must plead and prove that these representations were known by the defendant to be false, that they

were made by the defendant with the intent to deceive the plaintiff, and that the plaintiff detrimentally relied upon the representations. *Id.*

¶ 91    In holding that plaintiffs have adequately pled fraudulent concealment, the majority relies primarily on representations made by defendants in a sales brochure that was part of the defendants' marketing in 1995 and 1996. The brochure is attached to plaintiffs' complaint and a copy is included in appendix A to this dissent. *Infra* ¶ 121. The relevant representations made in the brochure were:

> " '(1) that the Property and the Units reflected "new architectural energies and solid construction skills";
>
> (2) that the [development companies] and/or Enterprise was committed to "quality construction and detail" for the Property and Units;
>
> (3) that the [development companies] and/or Enterprise consistently deliver "quality buildings" and "successful developments" which succeed "architecturally, aesthetically and economically"; and
>
> (4) that "[a]ll insulation shall be soundbatt fiberglass with the following R values: Exterior walls—R11; Third floor ceiling—R30 with integral vapor barrier." ' " *Supra* ¶ 15.

¶ 92    The majority notes that plaintiffs have alleged in their complaint that defendants knew these statements "to be false" and that plaintiffs have alleged the statements were made with the intent to deceive those who read the brochure. *Supra* ¶ 39. On this basis, the majority concludes that plaintiffs have adequately pled a fraudulent scheme by defendants "designed and intended" to prevent plaintiffs from discovering their causes of action. *Id.* Therefore, the majority holds, dismissal of plaintiffs' complaint "pursuant to section 2-619 of the Code would not be proper." *Id.* I disagree.

¶ 93    The first three statements on the majority's list, all of which are variations of a statement by defendants that they provide "quality" construction, cannot form the basis of fraudulent concealment. As this court has stated, "[d]escribing a product as 'quality' or as having 'high performance criteria' are the types of subjective characterizations that Illinois courts have repeatedly held to be mere puffing." *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 174 (2005). As an expression of subjective opinion, a puffing statement cannot be proven true or false and, therefore, cannot be a basis for fraud. *Barbara's Sales, Inc. v. Intel*

*Corp.*, 227 Ill. 2d 45, 72 (2007). Further, a statement by a builder asserting that it provides "quality" construction is not only a subjective characterization, it is also the type of statement made by every builder to its customers—no builder tells its customers it provides poor quality construction. If, as the majority holds, a mere statement by a builder that it performs "quality" work can form the basis of fraudulent concealment so as to negate the statute of repose, then the statute has effectively been written out of existence.

¶ 94   The fourth statement on the majority's list is a specification by defendants to provide thermal insulation of a certain quality in exterior walls and the "third-floor ceiling," which plaintiffs allege defendants failed to do. The majority concludes that defendants' statement regarding insulation also properly forms the basis of fraudulent concealment under section 13-214(e). *Supra* ¶ 39.

¶ 95   Defendants' specification of a certain type of insulation is not puffing. However, plaintiffs are not suing defendants because some of the occupants of the Henderson Square residences are too cold in the winter or too hot in the summer. They are suing to recover for water damage caused by structural defects. This is stated explicitly in plaintiffs' complaint, which alleges "significant water infiltration and resulting damages," and spelled out in detail in a report prepared by a consulting firm, Warton, Inc., that is appended to plaintiffs' complaint.

¶ 96   In this report, the Warton firm describes how its engineers examined two "garden-level" units in the Henderson Square development that sit beneath street-level townhomes. (A picture is included in appendix B to this dissent. *Infra* ¶ 122.) The exterior front walls of the street-level townhomes, as well as outdoor decks, sit directly over the living areas of the garden-level units. The problem, according to the report, was that rain and melting snow were penetrating through various gaps in the exterior front walls of the upper townhomes, such as around the windows and doors, and then traveling downward into the ceilings of the garden units. The report does not say, and there is no allegation in plaintiffs' complaint, that the water problems in the garden-level units had anything to do with a lack of insulation, and there is obviously no assertion that these problems had anything to do with insulation in the "third floor ceiling"—the top floor of the street-level townhomes, three stories above.[6]

---

[6]The vapor barrier mentioned in the sales brochure for the third-floor ceiling insulation is a material, such as a treated paper, plastic sheet or metallic foil used to prevent moist, indoor air from

¶ 97　　To properly plead fraudulent concealment it is not enough to simply allege that the defendant made a false statement. The plaintiff must also plead causation by alleging that he "detrimentally relied" on the false statement. *Orlak*, 228 Ill. 2d at 18. See also, *e.g.*, *Clay v. Kuhl*, 189 Ill. 2d 603, 613 (2000) (to establish fraudulent concealment, a plaintiff must "plead[ ] and prove[ ] that fraud prevented the discovery of the cause of action"); *Foster v. Plaut*, 252 Ill. App. 3d 692, 699 (1993) ("it is necessary to show affirmative acts by the defendant which were designed to prevent, and in fact did prevent, the discovery of the claim").

¶ 98　　Plaintiffs' complaint is deficient because, even assuming that defendants' specification of a certain type of insulation was a false statement for the purposes of fraudulent concealment under section 13-214(e), plaintiffs have failed to allege detrimental reliance and, hence, causation. Specifically, plaintiffs have failed to allege that the statement about insulation prevented any occupant of the Henderson Square residences from discovering the water penetration in the garden-level units, or from discovering any cause of action related to the water penetration.

¶ 99　　The majority opinion suffers from the same problem. Indeed, the majority's holding that defendants' specification of a certain type of insulation can form the basis for fraudulent concealment in this case appears to mean that any false statement made by a defendant, even if it did not, and could not, cause the plaintiff's failure to discover the underlying cause of action, can serve as the basis for fraudulent concealment under section 13-214(e). This is clearly error.

¶ 100　　The majority also offers the following statement in support of its holding that plaintiffs have adequately alleged fraudulent concealment with respect to the representations in the sales brochure: "Plaintiffs allege that defendants 'covered up the Units' deficiencies in brick and mortar,' cutting costs 'for the purpose of realizing greater profits from the city contract,' and that these deficiencies could not have been discovered by plaintiffs 'without extensive testing and opening up

diffusing into the ceiling. *Keep Warm Illinois, Insulation*, at 1 https://www.illinois.gov/KeepWarm/ Documents/insulation.pdf (last visited Oct. 21, 2015). "The warm air inside your house contains water vapor. If this vapor passes into the insulation and condenses, it can cause significant loss of insulating value, it can cause mold growth, peeling paint, and eventual rotting of structural wood." To prevent this, a vapor barrier is "installed on the warm side, the lived-in side, of the space to be insulated. This placement prevents the moisture in the warm indoor air from reaching the insulation." *Id*. The vapor barrier referenced in the brochure, in addition to being three stories away from the garden-level units, has nothing to do with preventing rain or melting snow from penetrating into the interior of the homes.

the walls of the common elements and the Units.' " *Supra* ¶ 39. The implication from this is that because the alleged structural problems in the residential units were latent defects covered up by "brick and mortar," the statute of repose is inapplicable.

¶ 101     However, this court has rejected this proposition. As the appellate court below stated:

> "The presence of latent defects, by themselves, are not sufficient to circumvent the statute of repose under the section 13-214(e) fraud exception. For example, in *VonHoldt v. Barba & Barba Construction, Inc.*, 175 Ill. 2d 426 (1997), our supreme court considered whether a cause of action involving a latent defect was barred by the statute of repose. The supreme court found that the plaintiff had successfully pleaded a cause of action for breach of the implied warranty of habitability because a latent defect existed. *VonHoldt*, 175 Ill. 2d at 432. However, the plaintiff filed the lawsuit 11 years after construction was completed. *VonHoldt*, 175 Ill. 2d at 433. The supreme court concluded that the lawsuit was time-barred by the statute of repose. *VonHoldt*, 175 Ill. 2d at 434." 2014 IL App (1st) 130764, ¶ 98.

The majority does not explain why it is rejecting the reasoning of *VonHoldt*. This, too, is error.

¶ 102     The statements in defendants' sales brochure cannot form the basis for fraudulent concealment. I would hold, therefore, that section 13-214(e) is inapplicable on this ground.


¶ 103                          B. Insufficient Reserve Fund

¶ 104     The majority offers a second basis for finding that plaintiffs have alleged fraudulent concealment, at least with respect to defendants Ronald Shipka, Sr., Ronald Shipka, Jr., and John Shipka. The majority observes that the Shipkas served as the first board of managers for the condominium association for approximately six months in 1996, from June until the end of that year, when control was turned over to the first elected board. During that time, the Shipkas had a fiduciary duty to maintain a reserve fund for capital expenditures and repairs of common elements in the condominium association. *Supra* ¶ 42.

¶ 105    The majority notes plaintiffs' allegation that "the Shipkas failed to provide sufficient funding for the reserve fund to meet the repairs needed due to the extensive defects in the construction." *Id.* According to the majority, this inadequate funding was essentially a false statement which "gave the appearance that the building was in much better shape than it was." *Id.* The majority further notes that plaintiffs have alleged that the Shipkas kept the reserve fund low "with the intent of deceiving the unit owners." *Supra* ¶ 45. This, the majority concludes, adequately alleges a basis for fraudulent concealment on the part of the Shipkas sufficient to defeat the statute of repose.

¶ 106    Again, however, to plead fraudulent concealment it is not enough to simply allege that the defendant made a false statement. The plaintiff must also plead causation by alleging detrimental reliance. *Orlak*, 228 Ill. 2d at 18. There is no allegation in plaintiffs' complaint that any occupant of the Henderson Square development, whether at the time the residences were first constructed or later, was, in fact, aware of the amount of money in the reserve fund, and because of that awareness, was prevented from discovering the water problems in the garden-level units, or from discovering any cause of action related to those problems. This is fatal to an assertion of fraudulent concealment under section 13-214(e). See *Orlak*, 228 Ill. 2d at 18.

¶ 107    Moreover, an inadequate reserve fund is going to exist in every instance where a condominium board sues a builder for construction problems; if there were an adequate reserve there would be no need for litigation. Thus, the majority appears to be saying that whenever a condominium board has to sue a builder, the statute of repose simply does not apply. I do not think the legislature intended this result.

¶ 108    A statute of repose, such as section 13-214(b), can lead to harsh consequences since it can cut off a cause of action before the plaintiff has discovered the underlying injury. See, *e.g.*, *Orlak*, 228 Ill. 2d at 7-8. Nevertheless, the legislature has made a policy decision in section 13-214(b) that 10 years (with a possible four-year extension depending on when the injury is discovered), is sufficient time to uncover and file construction related causes of action. We should not interpret an exception to this law in such a way as to render the legislature's policy decision meaningless.

¶ 109    I would hold that plaintiffs have failed to plead fraudulent concealment within the meaning of section 13-214(e) and, therefore, the statute of repose is applicable

- 32 -

in this case. Accordingly, I would reverse the judgment of the appellate court and affirm the judgment of the circuit court granting defendants' motion to dismiss.

¶ 110                    II. Count IV—Section 13-72-030 of the Chicago Municipal Code

¶ 111    In count IV of their complaint, plaintiffs allege that defendants violated section 13-72-030 of the Chicago Municipal Code. This section provides:

> "No person shall with the intent that a prospective purchaser rely on such act or omission, advertise, sell or offer for sale any condominium unit by (a) employing any statement or pictorial representation which is false or (b) omitting any material statement or pictorial representation." Chicago Municipal Code § 13-72-030.

Plaintiffs allege that the four statements in defendants' sales brochure discussed above (see *supra* ¶ 15), constitute "false" statements within the meaning of section 13-72-030.

¶ 112    In addition, plaintiffs contend that, should they prove defendants violated the ordinance, they are entitled to money damages. Specifically, plaintiffs argue they would be entitled to the "total cost of remediation of the deficiencies and damage to the common elements and residential units" plus "reasonable attorney fees."

¶ 113    The majority agrees and holds that plaintiffs have properly alleged a violation of section 13-72-030. In so holding, the majority emphasizes that section 13-72-030 cannot be equated with common-law fraud and that the statements prohibited under the ordinance are not limited to the "kind of statement required to maintain a common-law fraud claim." *Supra* ¶ 68. The majority states that it "agree[s] with the specially concurring justice in the appellate court" (*id.*), who concluded that, by its plain language, section 13-72-030 does not require that the offending statement be a statement of fact. See 2014 IL App (1st) 130764, ¶ 143 (Palmer, J., specially concurring). Thus, according to the majority, even puffing statements by a builder that it does "quality" work, like the statements in defendants' brochure at issue here, are prohibited under the ordinance.

¶ 114    The majority also concludes that plaintiffs need not prove detrimental reliance or causation to recover under the ordinance. According to the majority, recovery

- 33 -

may be had, so long as the "statements are *made with the intent* that the prospective purchaser rely on them" (emphasis in original). *Supra* ¶ 68.

¶ 115    Finally, the majority agrees with plaintiffs that recovery under section 13-72-030 is not limited to fines and attorney fees. Instead, recovery may include monetary damages such as those sought in plaintiffs' complaint. *Supra* ¶¶ 72-75.

¶ 116    The majority's reasoning cannot be correct. Section 13-72-030 prohibits only "false" statements. Chicago Municipal Code § 13-72-030. The ordinance must be referring to factual statements because a mere statement of opinion, such as puffing, cannot be proven false. See, *e.g.*, *O'Donnell v. Field Enterprises, Inc.*, 145 Ill. App. 3d 1032, 1039 (1986) ("There is no such thing as a false idea or opinion."). By its plain terms, the ordinance does not apply to the puffing statements in defendants' brochure.

¶ 117    Further, consider the scope of the majority's holding here. According to the majority, not only is puffing prohibited under the ordinance, but a plaintiff can recover damages that were *not* caused by the puffing. In this case, for example, even if plaintiffs are unable to prove that anyone actually saw defendants' sales brochure, and are unable to prove that the statements in the brochure were in any way related to the water damage (which is a given), it does not matter. Under the majority's reading of section 13-72-030, if plaintiffs show merely that defendants intended for the statements in the brochure to be relied on in some way, plaintiffs can recover the "total cost of remediation of the deficiencies and damage to the common elements and residential units" plus "reasonable attorney fees." This is an absurd result. It cannot have been intended by the drafters of the ordinance.

¶ 118    I would hold that section 13-72-030 does not prohibit puffing. I would also hold that, to successfully plead an action for the recovery of monetary damages under section 13-72-030, the plaintiff must allege that the false statement or statements were detrimentally relied upon and thereby caused the damages being sought. That standard has not been met here. Accordingly, I would affirm the judgment of the circuit court finding that plaintiffs failed to state a cause of action for monetary damages under section 13-72-030.

¶ 119    For the foregoing reasons, I respectfully dissent.

¶ 120    JUSTICES FREEMAN and KARMEIER join in this dissent.

¶ 121        Appendix A



THE DEVELOPER

ENTERPRISE DEVELOPMENT COMPANY

Innovative design, a commitment to quality construction and detail and a singular knowledge of the marketplace; these characteristics distinguish Enterprise Development Company as one of the most versatile and successful developers of real estate in the Midwest. The company's portfolio of developments includes new construction as well as rehabilitation projects, from townhomes, single family homes and loft redevelopments to commercial and mixed use properties. Having established an expertise at creating exciting residential communities from dormant urban sites, Enterprise's developments tend to have visible and positive impact on the neighborhoods in which they are located. Many have received national recognition for their ingenuity and creativity. Rated among the 400 largest residential development companies in the country, Enterprise Development company has consistently been regarded as a company with a vision to Chicago's future.

ENTERPRISE DEVELOPMENT COMPANY CONSISTENTLY DELIVERS . . .

- Quality buildings reflecting a flair for the original, not the exotic
- Innovative ideas backed by proven management and construction expertise
- Successful developments that enhance neighborhood living styles
- Developments that succeed -- architecturally, aesthetically and economically

EXHIBIT

D

C00309

- 35 -

## LAKEVIEW







Ever since its earliest days as an independent township, the "city" of Lakeview has long reflected the energy and enterprise of a successful Midwest town. A haven for independent shop-keepers, artesians, and skilled craftsmen, Lakeview continues to this day to reflect a true spirit of "hard work" as well as an emphasis on family pride.

Annexed officially to the City of Chicago in 1872, the township of Lakeview brought its own character, spirit and endless energies to its new metropolitan "father".

Come join us now in Lakeview's newest neighborhood redevelopment -- Henderson Square -- a Rowhouse community reflecting new architectural energies and solid construction skills. Convenient to all neighborhood needs, living in Lakeview has been referred to as the most "sought-after" lifestyle on Chicago's north side!

Experience your new neighborhood -- experience the energy of Lakeview!



C00310

## Henderson Square
## Property Specifications as of 11/01/94 for
## THE WINDSOR ROWHOUSES (Duplex)

### EXTERIOR FINISHES

Face Brick with Renaissance stone detailing along the front facade (all floors).

Face Brick along side (end units only) and rear elevations (all floors).

Overhead garage door with automatic opener.

Insulated 6-panel Taylor Colonial styled front entry door, integrally weather stripped.

### WINDOWS AND SLIDING GLASS DOORS

| Item | Description | Location |
|---|---|---|
| Windows/Sliding glass doors | "Rough" opening type casement and double hung windows and 8' sliding glass doors with insulated glass, wood frames, and contemporary hardware | Throughout |
| Skylights | Princess 30" X 30" | Roof above stairwell |
| | Princess 24" X 24" | Roof above Master Bathroom |

### INTERIOR FINISHES

Ceilings -- All unit ceilings shall be 5/8" gypsum board

Floors

| Item | Description | Location |
|---|---|---|
| Marble | 12" X 12" standard developer marble tile | Fireplace Hearth |
| Ceramic Tile | 8" X 8" standard developer ceramic tile | Master Bathroom & Front Entry |
| Hardwood | Select or Better grade red oak 2-1/4" X 3/4" sanded & finished | Living/Dining Room , Kitchen & Powder room |
| Carpet | 30 ounce standard developer over 3/8" rebond padding | Bedrooms, Stairs, Hall |
| Vinyl Tile | Standard gauge 12" X 12" vinyl composite tile | Laundry & Mechanical closet |

C00311

## PARTITION SYSTEMS

Partitions between units shall be 8" masonry walls with 5/8" gypsum on each side and R-5 sound insulation on both sides.

Interior partitions shall have one layer of 1/2" gypsum board on each side of a wood stud system.

## WALL SURFACES

Bathroom walls shall be 1/2" gypsum board (green board in tub area) with ceramic tile finish at tub recess.

Other walls shall be 1/2" gypsum board

## DOORS AND TRIM

| Item | Description | Location |
|---|---|---|
| Interior Swing Doors | Paint grade 1-3/8" hollow core flush fitted with butt hinges and latches | All Interior Swing doors |
| Door Hardware | Developer selected brushed chrome | Throughout |
| Bi-fold Doors | Hollow flush bi-fold with track and pull | All Interior Bi-Fold Doors |

## INSULATION

All insulation shall be soundbatt fiberglass with the following R values: Exterior walls - R11; Third floor ceiling - R30 with integral vapor barrier.

## PAINTING

With the exception of the garages, all gypsum board walls and ceilings shall be primed in Seller's standard white latex and then painted in accordance with Purchaser's specifications (no more than 2 colors) using developer's standard paint and colors. Garage walls shall not be primed nor painted, but will be fire taped.

## APPOINTMENTS

| Item | Description | Location |
|---|---|---|
| Kitchen Cabinets | KDA Avia all-white | Kitchen |
| Vanity Cabinets | KDA Avia all-white | Bathrooms |
| Countertops | "Pionite" self-edged plastic laminate | Kitchen |
| Vanity Tops | Pre-cast cultured marble top with integral bowl and post formed top | All Bathrooms |

- 38 -

C00312

## PERSONAL PROPERTY AND APPLIANCES

| Item | Description | Location |
|------|-------------|----------|
| Refrigerator/ Freezer | General Electric Model TBX21JAS<br>- White on white<br>- 20.7 cubic ft. capacity<br>- 4 adjustable cabinet shelves<br>- 2 vegetable/fruit pans<br>- Ice maker | Kitchen |
| Dishwasher | General Electric Model GSD680TWW<br>- White on white<br>- 5 cycles/8 options<br>- 2 wash levels<br>- Rinse aid dispenser<br>- Soft food disposal<br>- Permaturf interior | Kitchen |
| 30" Slide-in Gas Range | General Electric Model JGSP21GER<br>- White on white<br>- Self-cleaning oven<br>- Electric pilotless ignition<br>- White glass oven door with window<br>- White porcelain enameled lift-up cook top<br>- Electronic clock and minute timer | Kitchen |

## HEATING AND AIR-CONDITIONING

Heating and air-conditioning shall be individually controlled Lennox gas-fired, up flow furnaces and Lennox central air-conditioning system with built in humidifier. Duct work shall distribute heated/cooled air throughout the unit. Each unit shall have (1) zone of control with one thermostat location.

## ELECTRICAL SYSTEMS

Individual electric meters shall be provided for each unit.

Distribution and circuit breaker panels shall be located with in each unit.

Each unit shall have 100 amp service with a 20 circuit panel.

Leviton decora Trim.

C00313

## LIGHT FIXTURES

| Item | Description | Location |
|---|---|---|
| Bath Light | Hollywood style horizontal strip light | Full width at mirror in all Bathrooms |
| Recessed Incandescent | Recessed downlighting | Foyer (1), Hallstairs (1 per landing), Kitchen (6), & Fireplace (2) |
| Porcelain Incandescent Fixtures | | Closets |

## PLUMBING

| Item | Description | Location |
|---|---|---|
| Lavatory Bowl and Faucet | Pre-cast cultured marble top with integral bowl and Moen faucet | Bathrooms |
| Toilet | Mansfield #126-35 with Bemis Seats | Bathrooms |
| Bathtub | Briggs 60" X 30" steel tub with Moen valve #2739 | Master Bathroom |
| Sink/Sink Faucet | 33" X 32" Kingsford stainless steel double bowl with Moen faucet | Kitchen |
| Water Heater | Bradford 40 gallon gas-fired energy efficient heater | Mechanical Closet |

## GENERAL

| Item | Description | Location |
|---|---|---|
| Fireplace | Woodburning with 2' X 4' marble hearth | Living Room |
| Mirrors | 1/4" plate full width of vanity tops | Bathrooms |
| Medicine Cabinet | Recessed medicine cabinet | Side wall of Master Bathroom |
| Roof | G.A.F. Modified Bitumen | Roof |
| Shelving | Vinyl-coated wire | Closets |
| Garage | Unpainted drywall (fire taped only) and remote control door opener | Garage |

The above listed specifications are subject to revisions deemed advisable by the developer or architect, or required by law.

C00314

¶ 122        Appendix B



Photograph 1